O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERSTIN MINASS, | ) Case No. EDCV 13-01209-JGB ) (DTBx) |
| | ) |
| Plaintiff, | ) **ORDER** |
| | ) |
| v. | ) |
| | ) **[Motion filed June 27,** |
| HHC TRS PORTSMOUTH, LLC, | ) **2014]** |
| | ) |
| Defendant. | ) |

Before the Court is Defendant HHC TRS Portsmouth LLC's Motion for Summary Judgment or, alternatively, for Partial Summary Judgment. (Doc. No. 45.) After reviewing and considering all papers filed in support of and in opposition to the Motion, as well as the arguments presented at the August 11, 2014 hearing,

the Court DENIES Defendant's Motion for Summary Judgment.

## I.   PROCEDURAL HISTORY

On July 9, 2013, Plaintiff Kerstin Minass ("Plaintiff") filed a complaint against Defendants Marriott Hotel Services, Inc. Remington Holding LP, and Renaissance Hotel Operating Company, Inc.  (Doc. No. 1.)  On August 16, 2013, Plaintiff filed a First Amended Complaint against Renaissance Hotel Operating Company, Inc., Marriott Hotel Services, Inc., Marriott International, Inc., and Does 1 through 5, alleging claims for: (1) assault and battery of a business invitee; (2) intentional infliction of emotional distress; (3) fraudulent concealment; (4) gross negligence; and (5) negligence.  (Doc. No. 5.)  On December 23, 2013, the Court ordered that Plaintiff be permitted to file the Second Amended Complaint to add HHC TRS Portsmouth LLC as a defendant, and dismissed Renaissance Hotel Operating Hotel Co., Inc., Marriott Hotel Services, Inc., and Remington Holdings, L.P. without prejudice, pursuant to a stipulation submitted by the Parties.  (Doc. No. 19.)

On June 27, 2014, Defendant HHC TRS Portsmouth LLC ("Defendant") filed a Motion for Summary Judgment (Doc. No. 35), attaching:

- Declaration of Katherine Brinson ("Brinson Decl.," Doc. No. 35-1), attesting to exhibits A-H (id.);
- Declaration of Thomas Deardorff ("Deardorff Decl.," Doc. No. 35-2); and
- Statement of Uncontroverted Facts ("SUF," Doc. No. 35-3).

Plaintiff filed an opposition on July 7, 2014 (Doc. No. 37), attaching:

- Declaration of Richard Kaae ("Kaae Decl.," Doc. No. 37-1);
- Declaration of Kerstin Minass ("Minass Decl.," Doc. No. 37-2);
- Declaration of Ben Mohandesi ("Mohandesi Decl.," Doc. No. 37-3), attesting to Exhibits A-G (id.);
- Statement of Genuine Disputes ("SGD," Doc. No. 37-4); and
- Objections in Support of Opposition (Doc. No. 37-5).

On July 22, 2014, Defendant filed its reply (Doc. No. 38), attaching:

3

- Response to Plaintiff's Objections (Doc. No. 38-1);
- Response to SGD (Doc. No. 38-2);
- Evidentiary Objections to the Kaae Decl. (Doc. No. 38-3); and
- Declaration of Katherine Brinson in Support of Defendant's Reply ("Supp. Brinson Decl.," Doc. No. 38-4).

On July 23, 2014, Plaintiff filed a Motion to Strike Defendant's Late-Filed Reply. (Doc. No. 40.) In response, Plaintiff filed an Ex Parte Application for an Order Continuing the Hearing on the Motion for Summary Judgment and an Order that Defendant's Reply Will Be Considered. (Doc. No. 42.) Plaintiff opposed Defendant's Ex Parte Application on July 25, 2014. (Doc. No. 43.) On July 28, 2014 the Court denied Plaintiff's Motion to Strike and granted Defendant's Ex Parte Application. (Doc. No. 44.)

## II. LEGAL STANDARD[1]

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

---

[1] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby,</u>
<u>Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party
must show that "under the governing law, there can be
but one reasonable conclusion as to the verdict."
<u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to
demonstrate that it is entitled to summary judgment.
<u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);
<u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>,
707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party
bears the initial burden of identifying the elements of
the claim or defense and evidence that it believes
demonstrates the absence of an issue of material fact.
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial,
however, the moving party need not produce evidence
negating or disproving every essential element of the
non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.
Instead, the moving party's burden is met by pointing
out there is an absence of evidence supporting the non-
moving party's case.  <u>Id.</u>

The burden then shifts to the non-moving party to
show that there is a genuine issue of material fact
that must be resolved at trial.  Fed. R. Civ. P. 56(e);
<u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.
The non-moving party must make an affirmative showing
on all matters placed in issue by the motion as to

which it has the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Anderson</u>, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  <u>In re Oracle</u>, 627 F.3d at 387 (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson</u>, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. FACTS

### A.  Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."

<u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002); <u>see</u> Fed. R. Civ. Proc. 56(e).  At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial.  See <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003); <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001).

Plaintiff objects to several of Defendant's proposed undisputed facts and portions of the Deardroff Declaration on the grounds that the facts and evidence are irrelevant, misstates the evidence, lack foundation, constitutes improper expert testimony, are conclusory, are hearsay, or are not supported by the evidence.  (Doc. No. 37-5.)  Defendant objects to portions of the Kaae declaration as lacking foundation, calling for speculation, conclusory, and improper expert opinion.  (Doc. No. 38-3.)  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here.  <u>Burch v. Regents of Univ. of California</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); <u>see also</u> <u>Anderson</u>, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be

counted.").  Thus, the Court does not consider any objections on the grounds that the evidence lacks foundation, assumes facts in dispute, is misleading, vague, ambiguous, conclusory, speculative, conjecture, compound, irrelevant, or argumentative.  These objections are challenges to the characterization of the evidence and are improper on a motion for summary judgment.

## 1. Expert Opinion

### Pest Control Inspection

Plaintiff contends that there is no declaration establishing that the pest control inspector is qualified to render any expert opinions, and whether there was a "full inspection" of the subject hotel room calls for an expert opinion.  The Court does not rely on the representation that the inspection was a "full inspection" in its ruling.  Therefore, the Court overrules Plaintiff's objection to the representation that there was a "full inspection" as moot.

### Dr. Goldman

Plaintiff argues that there is no foundation establishing that Dr. Goldman is qualified to render any expert opinion regarding bedbugs and his opinions are based on unsupported speculation.  Rule 702 governs the admission of expert testimony, a decision in which

the Court has "broad latitude."  Elsayed Mukhtar v. California State Univ., Hayward, 299 F.3d 1053, 1064 (9th Cir. 2002).  Under Rule 702, in order for expert testimony to be admissible, the party offering the evidence must show it is both reliable and relevant. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590-91 (1993).

Dr. Goldman is a dermatologist who has been practicing for almost thirty years.  He learned about bedbug bites and the diagnosis of bedbug bites during his training and has treated bedbug bites.  Based on Dr. Goldman's experience as a practicing dermatologist, the Court finds that Dr. Goldman has the experience and knowledge necessary to reliably describe the typical appearance of bedbug bites and how bedbug bites are confirmed, as well as his opinion that Plaintiff's skin condition was not consistent with insect or bedbug bites.  Therefore, the Court overrules Plaintiff's objections to Dr. Goldman's opinions.

**Richard Kaae**

Defendant contends that the Kaae declaration should be disregarded because Kaae lacks the proper expert qualifications to make the statements in his declaration.  (See Doc. Nos. 38-2, 38-3.)  Kaae has over 40 years of entomological experience.  (Kaae Decl.

¶ 2.)  He has a bachelor's degree and a Ph.D. in entomology-pest management, has taught courses on pest control and pest management, and has published on insects and pests, including "Bedbug Biology and Control."  (Id.)  Additionally, he has owned and operated two pest control businesses, has conducted numerous bedbug inspections, and owns and operates a business that provides continuing education required for pest control individuals.  (Id.)

The Court agrees with Defendant that Kaae's qualifications, as recited in his declaration, do not render him qualified to diagnose Plaintiff's skin condition as bedbug bites.  It appears that his work and knowledge are focused on the management of and study of insects themselves, rather than the identification and diagnosis of insect bites. Therefore, the Court sustains Defendant's objections to Kaae's statements diagnosing Plaintiff's skin condition as bedbug bites.  However, based on Kaae's review of Mr. Myer's deposition testimony and his experience in pest management, the Court finds that Kaae's statements regarding the thoroughness of the inspection are reliable and the Court denies Defendant's objections to those statements.

**2. Notice of June 11, 2014 Inspection**

Plaintiff objects to the admissibility of evidence regarding the inspection due to the alleged inadequate notice of inspection provided by Defendant.  Plaintiff states that Plaintiff's counsel was notified on June 3, 2014 of the June 11, 2014.  Plaintiff's counsel informed Defendant's counsel that he was not available on June 11, 2014 and requested a different date, but Defendant's counsel refused.  Plaintiff has not cited to any authority suggesting that this was inadequate notice and Plaintiff was entitled to be at Defendant's expert's inspection of the linens.  Additionally, Plaintiff has not alleged that she was prevented from conducting her own inspection of the linens after Defendant's expert inspected them.  Therefore, the Court overrules Plaintiff's objections to evidence based on the June 11, 2014 inspection.

**3. Hearsay**

Plaintiff objects to Plaintiff's statement that her primary care physician did not make a representation as to whether he agreed or disagreed with the diagnosis of bedbug bites.  Hearsay is defined as an out of court statement offered to "prove the truth of the matter asserted."  Fed. R. Evid. 801(c). The Court does not

rely on this proffered evidence in its ruling and, therefore, overrules Plaintiff's hearsay objection as moot.

### B.   Disputed and Undisputed Facts

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of the Motion for Summary Judgment.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

Plaintiff stayed at the Renaissance Palm Springs Hotel ("Hotel") for one night, from May 4, 2013 – May 5, 2013, with Artin Hovsepian.  After dinner, Hovsepian dropped Plaintiff off at the hotel, around 9 p.m. – 10 p.m., and returned around 7 a.m. – 7:30 a.m. (Hovsepian Depo. at 38:1-39:13.)  When Plaintiff went to sleep on May 4, 2013, she did not have any bug bites, but awoke on May 5, 2013 with pain, itchiness, and discomfort.  (SUF ¶ 6.)  Hovsepian sent Dr. Yanik, a physician, several photos of Plaintiff's skin.  After receiving the photos, Dr. Yanik guessed, based on the

coloring and clustering, that Plaintiff had bedbug bites.  (Id. ¶ 7.)  Hovsepian then notified Hotel management that he thought there was a bedbug situation and requested that Hotel staff come to the room. (Id. ¶ 8.)

When the Hotel employees got to room, they asked what she had done the day before and requested to take photos of her.  (Minass Depo., 49:6-16, Brinson Decl., Ex. B.)  The Hotel manager told Plaintiff that the Hotel was going to quarantine the room and would call them the next day.  (Id. at 54:5-10.)  The Hotel manager also told Plaintiff there was an urgent care facility nearby.  (SUF ¶ 9.)  Plaintiff and Hovsepian then vacated their room and left the Hotel to go to Desert Oasis, an urgent care facility.  (Id. ¶ 10.)

Neither Plaintiff nor Hovsepian observed any bedbugs in their hotel room.  (Id. ¶¶ 11, 12.) Additionally, there is no evidence that Hovsepian suffered any bedbug bites.  (Id. ¶ 13.)

**Hotel Complaints and Procedures**

The Hotel has had approximately 25 to 30 complaints of bedbugs on the property since September 2011, but only two confirmed instances of bedbugs since the Hotel opened.  (Foote Depo. at 34:4-35:16; SGD ¶ 44.)  The Hotel has never received any complaints regarding

bedbugs in the subject hotel room, or in the rooms adjacent to it.  (SUF ¶¶ 30, 31.)

When a guest makes a complaint about bedbugs, or housekeeping staff discovers evidence indicating the possibility of bedbugs, the room is locked off and a Ecolab inspects the room.  Housekeeping staff is trained to look for all types of bugs as part of their daily cleaning.  (Vincent Depo. at 26:7-27:21.)

**Medical Diagnoses**

At Desert Oasis, Aarika Pardino, a physician assistant diagnosed Plaintiff as having bedbug bites. (Id. ¶ 23.)  Pardino had previous experience treating bedbug bites.  (Pardino Depo. 18:2-22.)  During her deposition, Pardino confirmed that, based on her experience, the scarring and bites were consistent with bedbug bites.  (Id. at 25:2-25.)  Pardino also testified that the only way to confirm that a person has been bitten by bedbugs is to get a specimen of the bug to test at a lab, which was not done before the diagnosis.  (SUF ¶ 24.)

Plaintiff later saw her primary care physician at Facey Medical Center approximately two to three days after she saw Pardino.  (Id. ¶¶ 25.)  Plaintiff also saw Dr. Goldman, a dermatologist at Facey Medical Center, on May 17, 2013 to evaluate her itchy rash. Dr. Goldman determined that the pictures Plaintiff

showed him with widespread rash would not be consistent with insect bites, including bedbug bites.  (Id. ¶ 28.) Dr. Goldman also stated at his deposition that bedbug bites look like other insect bites, and whether a bite is a bedbug bite versus another insect bite is usually determined by an exterminator who examines the facility involved.  (Id. ¶ 29.)  Dr. Goldman did not discuss Plaintiff's activities for 24 hours to 48 hours prior to the injury presenting itself when he treated her. (Goldman Depo. at 29:1-4.)

**Inspections**

After Plaintiff and Hovsepian left the Hotel, Brad Vincent, the Hotel's head of security, locked out the subject hotel room, making it inaccessible to anyone other than himself and the manager on duty.  (SUF ¶ 14.)  The subject hotel room was not accessed again until May 6, 2013, when Tim Myers of EcoLab, an independent pest control company, performed an inspection of the subject room, at the request of the Hotel.  (Id. ¶¶ 15, 16.)  The process Mr. Myers generally uses to inspect a room is: (1) inspect the bed with a high intensity flashlight and magnifying glass, slowly removing each layer of linen, the mattress cover, and mattress; (2) lean the mattress against the wall to look on both sides of it; (3) lift the box spring and remove the liner to look in the

cracks and crevices of the mattress and box spring; (4) lean the box spring against the wall and look on the legs and edges of the metal frame; (5) look along the base of the carpeting of the headboard area and lift the carpet away from the wall to look in the cracks; (6) move the night stands, take the drawers out, and look underneath the drawers and night stands; (7) lift the headboard and look behind the wooden frame; (8) look at other edges of the carpeting around the room; (9) look at both sides of curtains and area around; (10) look around the edges of the room, inside and on sides of the dresser, and closets; (11) take apart any couch or hideaway bed; (12) check the bathroom area. (Id. ¶ 17.)  Mr. Meyers does not have any recollection of deviating from his typical process in his inspection of the subject room.  (Id.)  His inspection lasted approximately 20 minutes.  (SGD ¶ 38.)  Additionally, although the subject room contains two beds, Mr. Meyers recalls only one bed.  (Id. ¶ 39.)  Mr. Myers found no indication that bedbugs had been in the subject room recently, including any live bugs, fecal matter, blood smears, or shell casings.  (SUF ¶ 18.)   Plaintiff's expert, Richard Kaae, stated that a thorough inspection of a hotel room could not have been completed in 20 minutes by one person, especially when the room contains two beds.  (Kaae Decl. ¶ 8.)

1
2
3
4
5
6
7
8
9

     After the EcoLab inspection, the Hotel preserved
all linens from the subject room, placing them in a
sealed bag and stored them in a locked storage area of
the Hotel, which is only accessible to the Mr. Vincent
and the Director of Engineering.  (SUF ¶ 19.)  The
linens were not accessed or disturbed until June 11,
2014, when Defendant's retained expert performed an
inspection of the preserved linens and found no
evidence of bedbugs.  (Id. ¶¶ 20, 21.)

10

## IV.  DISCUSSION

11
12
13
14
15
16
17
18
19
20

     Defendant moves for summary judgment on Plaintiff's
premises liability and negligence claims.  To prevail
on her negligence and premises liability claims,
Plaintiff must establish duty, breach, causation, and
damages.  Ortega v. Kmart Corp., 26 Cal. 4th 1200
(2001).  In Howard v. Omni Hotels Mgmt. Corp., 203 Cal.
App. 4th 403 (2012), the California Court of Appeal set
forth the applicable standard for these related causes
of action:

21
22
23
24
25
26
27
28

     Commercial property owners are not insurers of the
     safety of their patrons, although they owe the
     patrons duties to exercise reasonable care in
     keeping the premises reasonably safe.  To exercise
     a degree of care that is commensurate with the
     risks involved, the owner must make reasonable
     inspections of the portions of the premises open to
     customers. An owner is liable for harm caused by a

dangerous condition, of which the owner had actual
or constructive knowledge.  An injured plaintiff
has the burden of showing that the owner had notice
of in sufficient time to correct it, but failed to
take reasonable steps to do so.  One way to carry
that burden is to raise an inference that the
hazardous condition existed long enough for the
owner to have discovered it, if an owner exercising
reasonable care would have learned of it.

Howard, 203 Cal. App. 4th at 431 (internal citations
and quotations omitted).  In particular, the Howard
court reiterated that "hotel proprietors have a special
relationship with their guests that gives rise to a
duty 'to protect them against unreasonable risk of
physical harm.'"  Id. (citing Peterson, 10 Cal. 4th
1185, 1206 (1995)).  "'The proper test to be applied to
the liability of the possessor of land is whether in
the management of his property he has acted as a
reasonable man in view of the probability of injury to
others.'"  Alcaraz v. Vece, 14 Cal. 4th 1149, 1156
(1997) (quoting Rowland v. Christian, 69 Cal. 2d 108,
119 (1968)).  "This requires persons to maintain land
in their possession and control in a reasonably safe
condition."  Id. (quotation omitted).  The defendant is
not liable where he neither knows nor should know of
the unreasonable risk."  Howard, 203 Cal. App. 4th at
431-32.  Hotel guests can reasonably expect that the

18

hotel owner will be reasonably diligent in inspecting its rooms for defects, and correcting them upon discovery.  Id.  However, hotel guests cannot reasonably expect the defendant to correct defects of which it was unaware and could not be discerned by a reasonable inspection.  Id. (quoting Peterson, 10 Cal. 4th at 1206.)  Defendants "are liable for injuries on land they own, possess, or control . . . . A defendant need not own, possess and control property in order to be held liable; control alone is sufficient." Alcaraz, 14 Cal. 4th at 1162 (quotation omitted).

The primary issues here are the elements of breach and causation.  Defendant argues that it is entitled to summary judgment on Plaintiff's premises liability and negligence claims because (1) Defendant did not breach any duty by allowing a dangerous condition to exist at the Hotel as there is no evidence that bedbugs existed at the subject hotel room where Plaintiff slept, and (2) Plaintiff cannot establish causation because there is no evidence to support that Plaintiff's injury was the result of bedbug bites.  (See generally MSJ at 9-13.)  The undisputed evidence is clear that no indication of bedbugs was observed or found in the subject room.  Additionally, Dr. Goldman testified Plaintiff's skin condition was not consistent with insect bites.  However, Pardino, the physician assistant at Desert Oasis, diagnosed Plaintiff with

bedbug bites.  Both Dr. Goldman and Pardino testified
that bedbug bites are typically confirmed through a
specimen of the insect.  However, this does not
contradict or preclude Pardino's diagnosis of bedbug
bites.  Pardino testified that Plaintiff's scarring and
bites were consistent with what she had previously seen
on other patients with bedbug bites, which contradicts
Dr. Goldman's testimony.

Particularly in light of the fact that Pardino saw
Plaintiff the day she discovered her skin condition and
took into account her history, and Dr. Goldman saw
Plaintiff several days later, the Court finds that
Pardino's diagnosis and deposition testimony creates
genuine issues of material fact as to whether
Plaintiff's skin condition was caused by bedbug bites
and whether there were bedbugs in the subject hotel
room.  Additionally, there is evidence that there have
been several complaints and two confirmed instances of
bedbugs since the Hotel's opening.  At the hearing,
Defendant's counsel acknowledged that the Hotel
inspects rooms adjacent to those where bedbugs are
found because bedbugs can move from room to room.
Therefore, viewing the evidence in the light most
favorable to Plaintiff, a reasonable juror could
determine that: (1) Defendant knew there was a risk of
bedbugs in Plaintiff's room given the previous
complaints and confirmed instances of bedbugs in other

rooms of the Hotel; (2) Defendant breached its duty to Plaintiff by not correcting the existence of bedbugs in the room; and (3) Plaintiff's rash was caused by bedbug bites.

## V.   CONCLUSION

For the foregoing reasons the Court DENIES Defendant's Motion for Summary Judgment.

Dated:  August 19, 2014     _____
                                    Jesus G. Bernal
                            United States District Judge